IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| ALISON T. KAMPE, | ) | Case No. CI24-_____ |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT AND JURY DEMAND** |
| | ) | |
| NEBRASKA URBAN INDIAN HEALTH COALITION, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff, by and through her attorney, and for her causes of action against the Defendant hereby states the following:

**PARTIES-VENUE-JURISDICTION**

1. Plaintiff ALISON T. KAMPE was a resident of Omaha, Douglas County, Nebraska at all times relevant hereto.

2. Defendant NEBRASKA URBAN INDIAN HEALTH COALITION, INC. is a Nebraska non-profit corporation conducting business in Nebraska, and at all times relevant was doing business in Omaha, Douglas County, Nebraska.

3. This Court has original jurisdiction over the claims arising under federal law and concurrent jurisdiction over state law claims.

4. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and the Court's pendent claim jurisdiction under 28 U.S.C. §1367(a).

5. Venue is appropriate in this District under 28 U.S.C. §1391(b) and (c)

6. On or about December 21, 2024, less than 90 days prior to the filing of this Complaint, Plaintiff received the U.S. Equal Opportunity Commission's Notice of Right to Sue with respect to Plaintiff's Charge No. 32E-2023-00399. The EEOC's letter was post marked November 15, 2024, but the letter was not delivered to Plaintiff's address. Rather, the EEOC's letter was held at the U.S. Post Office, and Plaintiff did not receive it until she picked up a holiday package at her local post office location on the Saturday before Christmas.

**FACTUAL ALLEGATIONS**

7. Plaintiff is a Native American female, and was employed by the Defendant as a residential therapist starting on August 2, 2021.

8. Around March 2022, Plaintiff's coworker, a maintenance employee, Charles Brocks (hereinafter Brocks) began sexually harassing, and otherwise harassing, Kampe. The first-time Kampe met Brocks, he discussed sexual encounters with other women. Kampe told Brocks she was not comfortable with that type of discussion. Shortly thereafter, Brocks started to text Kampe late at night and he would come into her office and ask for a "one on one session" and proceed to talk about sexual intercourse. Kampe told Brocks that she didn't want him texting her at night or coming to her office.

9. Kampe learned that Brocks was harassing another female coworker in peer support who was married. Kampe complained about Brocks' harassment to Behavior Health Director Beau Boryca (hereinafter Boryca).

10. Upon information and belief, Brocks was told not to talk with Kampe or the other female coworker; however, Brocks did not comply. Brocks came into the bathroom when Kampe was supervising a female client's drug test, and Kampe had to tell him to leave. Brocks would continue to come to Kampe's office to watch her and try to talk to her even though she was not welcomed. As a result, Kampe had to ask a security officer to monitor her office for her safety. The security officer agreed, commenting that Brocks was on video coming and going from her office an excessive number of times.

11. Kampe complaint again to Boryca, who reported it to CEO Dr. Donna L. Polk. After learning of Kampe's complaints regarding Brocks, Polk calling Kampe "another fragile White woman," and Youth Program Director Lestina Saul-Merdassi called Kampe a "colonizer," despite knowing that Kampe was Native American. Kampe complained about the retaliatory comments, but no investigation was done or discipline given. One of the doctors in the office told Kampe to watch out for her job because Polk will fire people who call her out on her inappropriate comments.

12. Upon information and belief, no investigation was done into the sexual harassment complaints by Kampe, and Brocks was not disciplined. Instead, Brocks was promoted and moved departments.

13. Around May 2022 and again in December 2022, Boryca denied Kampe a

promotion to supervisor. Kampe was previously under the impression that she would be promoted to supervisor as soon as she received her full license.

14. Following the denial of her promotion, Kampe was still expected to perform the duties of a supervisor and perform at that higher level without the title and pay.

15. Kampe disclosed her pregnancy to Defendant in June 2022. After disclosing the news, Boryca began harassing her and alleging that Kampe would not be able to handle the supervisor position because of impending pregnancy related to her prenatal doctor's appointments. Boryca further claimed he was concerned that Kampe might become aggressive towards clients due to her pregnancy. Kampe reported Boryca's statements to Clinical Supervisor Sherry Sutton.

16. On September 13, 2022, Kampe's doctor requested an accommodation related to her disability, ADHD, which was denied by Boryca. Kampe explained that because she was pregnant, she was unable to take her ADHD medication, so she asked to be able to complete her documentation in a quiet session room, rather in her cubical that was noisy and had more distractions. Kampe also asked for more time to do her documentation, and was allowed to block off time in her calendar for that specific purpose. However, she never got the benefit of the extra documentation time because she was always asked to do other client related job duties instead.

17. Kampe also requested accommodations related to her pregnancy, including but not limited to, acquisition of a table so she could type her notes one something other than her lap because her stomach was in the way. Boryca initially refused to grant her this accommodation, telling Kampe that she was "being dramatic" and stated she still had to get her work done. A week before Kampe left on maternity leave, Boryca finally brought in a table, tossing it in the room and saying "here."

18. Kampe provided an accommodation request from her doctor around December 2022 when she was placed on bed rest right before giving birth to her child. Defendant granted the request, but later brought up that Kampe caused Defendant hardship for going on leave earlier than her due date.

19. Beginning on January 10, 2023, Kampe utilized maternity leave pending the birth of her child.

20. Kampe requested FMLA paperwork on several occasions from Danae Woods (hereinafter Woods) in Human Resources. Woods refused to provide the requested paperwork.

21. Boryca continued to contact Kampe about work related issues throughout her maternity leave, including while Kampe was in active labor.

22. Kampe's maternity leave was due to end on or about February 27, 2023. Kampe contacted Boryca multiple times prior to her return to discuss her schedule and setting up appointments with clients, but Boryca refused to agree on a date for her return to work.

23. On February 27, 2023, Kampe's employment was terminated by Woods and COO Amy Hutfles. Hutfles alleged that Kampe had violated the Defendant's Code of Civility. When Kampe asked for an explanation, she was unable to provide examples of what Kampe had done to violate the Code of Civility.

24. When Kampe received the Defendant's letter notifying her of her termination, it provided no incident or example of an alleged violation of the Code of Civility.

25. Kampe's position with Defendant was filled by a male.

26. Defendant did not provide Kampe with the required COBRA notices following her termination.

27. Prior to her termination, Kampe's job performance was satisfactory.

28. At the time of her termination, Plaintiff was earning approximately $59,000 a year working 40 hours a week for Defendant. As of the date of this filing, Plaintiff's lost wages resulting from Defendant's wrongful conduct are approximately $12,000 and are continuing. As part of her compensation, Plaintiff also received employment benefits for health insurance and retirement in amount that is currently unknown to Plaintiff and will be subject to further discovery.

29. As a result of Defendant's wrongful conduct, Plaintiff suffered lost wages, compensatory damages, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and has also incurred attorney's fees and other costs that are continuing.

## COUNT I
## RACE/COLOR DISCRIMINATION
### 42 U.S.C. §2000e et seq.

30. Plaintiff hereby incorporates paragraphs 1 through 29 as if fully set forth herein and states:

31. Defendant discriminated against Plaintiff with respect to terms and conditions of

her employment on the basis of race and/or color in violation of Title VII by treating her differently than similarly-situated co-workers who were Caucasian and/or white.

32. Plaintiff suffered adverse action, including but not limited to unequal pay, unfavorable work assignments, discipline, failure to promote and termination of employment.

33. Plaintiff's race and/or color were a motivating factor in the decision-making regarding Plaintiff's terms and conditions of employment.

34. The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendant is subject to punitive damages.

35. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, front pay, and other emoluments of employment.

## COUNT II
## RACE DISCRIMINATION-HOSTILE WORK ENVIRONMENT
## 42 U.S.C. §§2000(e) et seq.

36. Plaintiff hereby incorporates paragraphs 1 through 35 as if fully set forth herein and states:

37. Defendant discriminated against Plaintiff with respect to her employment on the basis of her race in violation of the Title VII by subjecting her to a hostile work environment caused by the conduct of her subordinates and supervisors.

38. Defendant's employees conduct was unwelcome.

39. Defendant's conduct was based on Plaintiff's race or color.

40. Defendant's conduct was sufficiently severe or pervasive that a reasonable person in the Plaintiff's position would find the Plaintiff's work environment to be hostile.

41. At the time such conduct occurred and as a result of such conduct, Plaintiff believed her work environment to be hostile.

42. Plaintiff complained of the hostile work environment to Defendant, and Defendant did nothing remedy the issue.

43. The unlawful employment practices complained of above were malicious or

recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendant is subject to punitive damages.

44. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, front pay, and other emoluments of employment.

## COUNT III
## RACE DISCRIMINATION
## 42 U.S.C. § 1981

45. Plaintiff hereby incorporates by reference paragraphs 1 through 44 and states:

46. Defendant discriminated against Plaintiff on the basis of her race in violation of 42 U.S.C. § 1981 by subjecting her to disparate treatment in the terms, privileges, and conditions of her employment.

47. Plaintiff suffered adverse action, including but not limited to unequal pay, unfavorable work assignments, discipline, failure to promote and termination of employment.

48. Plaintiff's race was a motivating factor in the decision-making regarding Plaintiff's terms and conditions of employment.

49. The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendant is subject to punitive damages.

50. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, front pay, and other emoluments of employment.

## COUNT IV
## RETALIATION
## 42 U.S.C. §2000e-3

51. Plaintiff hereby incorporates paragraphs 1 through 50 as if fully set forth herein and states:

52. During his employment, Plaintiff engaged in protected activity, including but not limited to exercising her rights under Title VII by internally complaining of race and sex discrimination, internally opposing race and sex discrimination and participating in an internal investigation related to race and discrimination. Plaintiff further engaged in protected activity by seeking both a disability and pregnancy accommodation under the ADA and Title VII.

53. Defendant took adverse employment action against Plaintiff, including but not limited to subjecting her to harassment, discipline, failure to promote and termination of employment.

54. There is a causal connection between Plaintiff's participation in protected activity and Defendant's adverse action against her.

55. The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendant is subject to punitive damages.

56. As a result of Defendant's retaliation, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

## COUNT V
## SEX DISCRIMINATION-HOSTILE WORK ENVIRONMENT
## 42 U.S.C. § 2000e-2

57. Plaintiff hereby incorporates paragraphs 1 through 56 as if fully set forth herein and states:

58. Plaintiff was subject to unwanted sexual conduct including inappropriate discussion of sexual intercourse, inappropriate sexual advances and intimidation, and inappropriate communication outside of work hours.

59. This conduct was unwelcome.

60. Such conduct was based on the Plaintiff's sex.

61. Such conduct was sufficiently severe or pervasive that a reasonable person in the Plaintiff's position would find the plaintiff's work environment to be hostile.

62. At the time such conduct occurred and as a result of such conduct, Plaintiff believed

her work environment to be hostile; and,

63. Defendant knew or should have known of the conduct towards Plaintiff.

64. Defendant failed to take prompt and appropriate corrective action to end the harassment.

65. The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendant is subject to punitive damages.

66. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment and attorney's fees.

### COUNT VI
### TITLE VII PREGNANCY DISCRIMINATION

67. Plaintiff repleads paragraphs 1 through 67 as if fully set forth herein.

68. Defendant discriminated against Plaintiff with respect to the terms and conditions of her employment based on her pregnancy and sex, in violation of Title VII.

69. Defendant failed to accommodate Plaintiff's pregnancy in violation of Title VII.

70. Defendant terminated Plaintiff from her employment based on her pregnancy and sex, in violation of Title VII.

71. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to mental and emotional distress; anguish; humiliation; embarrassment; medical, therapeutic, and other expenses; lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

### COUNT VII
### VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT
### 29 U.S.C. 2601 et seq.

72. Plaintiff hereby incorporates paragraphs 1 through 71 as if fully set forth herein and states:

73. Defendant were at all times material an "employer" within the meaning of the

Family Medical Leave Act.

74. Plaintiff is and was at all times material an "eligible employee" within the meaning of the Family Medical Leave Act.

75. During her employment, Plaintiff suffered from one or more "serious health conditions" within the meaning of the Family Medical Leave Act.

76. Plaintiff was entitled to a leave of absence pursuant to her rights under the Family Medical Leave Act.

77. Plaintiff invoked her right to a leave of absence under the Family Medical Leave Act.

78. Defendant failed to restore Plaintiff to the same job or to an equivalent job upon returning from protected leave.

79. Defendant interfered with Plaintiff's right to take leave under the Family Medical Leave Act by terminating her during her leave and in other ways to be proven at trial.

80. Defendant retaliated against Plaintiff by terminating Plaintiff for exercising her rights under the Family Medical Leave Act and other ways to be determined by trial.

81. As a result of Defendant's acts and omissions, Plaintiff has in the past, and will in the future, suffer damages including, but not limited to, lost wages, benefits, future earnings, liquidated damages and other emoluments of employment.

**COUNT VIII**
**VIOLATIONS OF CONSOLIDATED OMNIBUS BUDGET RECONCILIATION ACT**
**29 U.S.C §1161 et seq.**

82. Plaintiff hereby incorporates paragraphs 1 through 81 as if fully set forth herein and states:

83. Defendant is a qualified employer under 29 U.S.C. §1161.

84. Plaintiff was a qualified beneficiary under 29 U.S.C. §1161.

85. Plaintiff's termination on February 27, 2023 was a qualifying event under 29 U.S.C. §1161 and 1162(2).

86. Defendant failed to provide Plaintiff timely notice of her option to extend coverage under the Defendant's group health plan.

87. As a result of Defendant's failure to provide notice to Plaintiff, Defendant is liable

for penalties and Plaintiff's medical bills.

## COUNT IX
## DISABILITY DISCRIMINATION
## 42 U.S.C. §§12101 et seq.

88. Plaintiff hereby incorporates paragraphs 1 through 87 as if fully set forth herein and states:

89. Defendant was at all times material an "employer" within the meaning of under 42 U.S.C. §12111.

90. Plaintiff is and was disabled within the meaning of the ADA, as amended.

91. Defendant regarded Plaintiff as disabled by an actual or perceived impairment that substantially limits a major life activity.

92. At all times relevant, Plaintiff suffered from an impairment that substantially limited one or more of her major life activities and major bodily functions.

93. At all times relevant, Plaintiff was able to perform the essential functions of her job, with or without reasonable accommodation.

94. Defendant discriminated against Plaintiff because of her disability and altered a term, condition, and/or privilege of her employment, including but not limited to harassing Plaintiff about her disability and termination of her employment.

95. Defendant failed to accommodate Plaintiff's disability in violation of the ADA.

96. Defendant failed to engage in good faith in an interactive process with Plaintiff to assist her in accommodating her disability in violation of the ADA.

97. Plaintiff's disability was a motivating factor in such discrimination, failure to accommodate and failure to engage in the interactive process.

98. The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendant is subject to punitive damages.

99. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional

distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

## DAMAGES

100. Plaintiff hereby incorporates by reference paragraphs 1 through 99 and states:

101. As a result of Defendant's harassment, discrimination and retaliation, Plaintiff has suffered damages and seeks the following relief:

    a. Back pay and lost benefits to the time of trial;

    b. Front pay including retirement and other benefits;

    c. Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

    d. Punitive damages under Federal law;

    e. Liquidated damages under 29 U.S.C. § 216(b);

    f. Daily penalties under 29 U.S.C. §1132(c);

    g. Attorney's fees, expert witness fees and other reasonable costs; and,

    h. Pre-judgment and post judgment interest.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for all of her general, special and punitive damages, for costs, attorney's fees, interest and for such other relief as just and equitable.

Plaintiff demands a trial by jury.

Dated: February 14, 2025.

    ALISON KAMPE, Plaintiff

BY: s/ Jennifer Turco Meyer
Jennifer Turco Meyer, #23760
Turco Meyer Law, LLC
4309 South 174th Avenue
Omaha, Nebraska 68135
(402) 577-0252-Office
jennifer@turcomeyer.law
Attorney for Plaintiff